ROBBINS ARROYO LLP
BRIAN J. ROBBINS (#190264)
brobbins@robbinsarroyo.com
CRAIG W. SMITH (#164886)
csmith@robbinsarroyo.com
JENNY L. DIXON (#192638)
jdixon@robbinsarroyo.com
GINA STASSI (#261263)
gstassi@robbinsarroyo.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| THE POLICE RETIREMENT SYSTEM OF ST. LOUIS, Derivatively on Behalf of FUSION-IO, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID A. FLYNN, DENNIS P. WOLF, H. RAYMOND BINGHAM, DANA L. EVAN, SCOTT D. SANDELL, and FOREST BASKETT, <br><br> Defendants, <br><br> -and- <br><br> FUSION-IO, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. <br><br> VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT <br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff, by its counsel, submits this Verified Shareholder Derivative Complaint.

## NATURE OF THE ACTION

1.     This is a verified shareholder derivative action brought by plaintiff on behalf of nominal defendant Fusion-io, Inc. ("Fusion-io" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law.  These wrongs resulted in hundreds of millions of dollars in damages to Fusion-io's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.     This action arises out of the defendants' improper statements concerning the Company's business prospects and overall financial health.  Fusion-io is a computer hardware and software systems company that designs and manufactures memory storage solutions using flash memory technology.  A few "strategic customers" account for *50-60%* of the Company's revenues.  Fusion-io's reliance on these strategic customers for such a significant portion of its revenues presented a material risk to the Company's financial health.

3.     To assure the market about this material risk, defendants touted Fusion-io's purported strong relationships with its strategic customers and falsely claimed that the Company was able to accurately project anticipated demand.  Moreover, defendants continuously stated that demand from Fusion-io's strategic customers for the Company's products was stable and would lead to revenue growth.  Defendants concealed, however, that the Company was facing growing competitive pressure and risk from the commoditization of flash memory products.  These negative trends in Fusion-io's business caused demand for the Company's products to dwindle.

4.     Defendants continued their ruse despite seeing a material reduction in demand from Facebook, Inc. ("Facebook") and Apple, Inc. ("Apple"), two of the Company's most important strategic customers.  Even when defendants announced that the Company no longer anticipated achieving its previously issued earnings guidance for the fiscal third quarter of 2013 and fiscal year 2013, defendants dispelled any concern about the Company's long term business prospects.  Defendants claimed that the change in guidance was due to a temporary shift in the

1  timing of purchases from Fusion-io's strategic customers.  In particular, defendants blamed the

2  reduced guidance on a *two-quarter shift in the timing of [Facebook's and Apple's] bulk*

3  *purchases*."  Defendants maintained that sales to Facebook and Apple would return to previous

4  levels following this two-quarter shift.

5      5.      The  truth  behind  the  Company's  business  prospects  and  the  Individual

6  Defendants' (as defined herein) wrongdoing finally began to emerge on October 23, 2013, when

7  the Company issued a press release announcing its financial results for the fiscal first quarter

8  ended September 30, 2013.  In the press release, Fusion-io revoked its prior 20% revenue growth

9  guidance.  Notwithstanding defendants' repeated assurances that Facebook and Apple had only

10  shifted the timing of their purchases of Fusion-io products, the Company revealed a decreased

11  demand  from  these  strategic  customers.    Fusion-io's  flash  memory  products  had  become

12  increasingly commoditized, which allowed the Company's customers to seek out lower cost

13  alternatives.  Moreover, as result of this greater competitive pressure, the Company was suffering

14  a decrease in gross margins as it was being forced to lower prices for its products to match

15  competitors' prices.

16      6.      Upon  disclosure  of  the  Company's  true  business  health  and  limited  financial

17  outlook, Fusion-io's market capitalization plunged by nearly *25%*, erasing more than *$316*

18  *million* in value.  As a direct result of the Individual Defendants' wrongdoing, the Company is

19  now the subject of a securities class action lawsuit filed in the United States District Court for the

20  Northern District of California on behalf of investors who purchased Fusion-io shares.  The

21  securities class action lawsuit poses the risk of hundreds of millions of dollars in damages to the

22  Company.

23      7.      Notwithstanding  his  dissemination  of  improper  statements  which  has  caused

24  Fusion-io to incur substantial damage, the Board of Directors (the "Board") still granted

25  defendant David A. Flynn ("Flynn"), the Company's former Chief Executive Officer ("CEO"), a

26  golden  parachute  when  he  resigned  in  May  2013.   Most  notably,  as  part  of  his  severance,

27  defendant Flynn: (i) received a cash payment of $500,000; (ii) an additional twelve months of

28  vesting of his outstanding equity awards; and (iii) reimbursement of group health plan premiums

1    for him and his eligible dependents.  Moreover, defendant Flynn remains eligible to receive a

2    pro-rated annual bonus for the 2013 fiscal year.

3         8.      Plaintiff brings this action to protect the Company's interests and hold its

4    wayward fiduciaries accountable for their wrongdoing.

5                           **JURISDICTION AND VENUE**

6         9.      Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the

7    parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8         10.      This Court has jurisdiction over each defendant named herein because each

9    defendant is either a corporation that conducts business in and maintains operations in this

10    District, or is an individual who has sufficient minimum contacts with this District to render the

11    exercise of jurisdiction by the District courts permissible under traditional notions of fair play

12    and substantial justice.

13         11.      Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i)

14    one or more of the defendants either resides in or maintains executive offices in this District,

15    including, but not limited to, Fusion-io's "Silicon Valley Office"; (ii) a substantial portion of the

16    transactions and wrongs complained of herein, including the defendants' primary participation in

17    the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary

18    duties owed to Fusion-io, occurred in this District; and (iii) defendants have received substantial

19    compensation in this District by doing business here and engaging in numerous activities that had

20    an effect in this District.

21                         **INTRADISTRICT ASSIGNMENT**

22         12.      This action is properly assigned to the San Jose division of this Court.

23                               **THE PARTIES**

24    **Plaintiff**

25         13.      Plaintiff The Police Retirement System of St. Louis has continuously owned the

26    Company's stock since at least July 31, 2011.  Plaintiff's trustees are all citizens of Missouri.

27    Therefore, Plaintiff is a citizen of Missouri.

28

**Nominal Defendant**

14.     Nominal defendant Fusion-io is a Delaware corporation with principal executive offices at 2855 E. Cottonwood Parkway, Suite 100, Salt Lake City, Utah.   Accordingly, defendant Fusion is a citizen of Delaware and Utah.  Fusion-io provides solutions for enterprises, hyperscale datacenters, and small to medium enterprises that accelerate databases, virtualization, mission-critical applications, cloud computing, big data, and information systems.  Fusion-io's integrated hardware and software platforms and solutions enable the acceleration of data and applications in legacy, open, and proprietary architectures.  The Company's core technology leverages flash memory to significantly increase datacenter and computer-based information system efficiency, with enterprise grade performance, reliability, availability, and manageability. Fusion-io sells its solutions through a global direct sales force, original equipment manufacturers ("OEM"), and other channel partners.

**Defendants**

15.     Defendant Flynn was Fusion-io's Chairman of the Board from May 2011 to May 2013; CEO from March 2010 to May 2013; President from March 2010 to May 2013; and a director from July 2006 to June 2013.  Defendant Flynn was also Fusion-io's Chief Technology Officer from December 2005 to March 2010 and President from December 2005 to February 2009.  Defendant Flynn co-founded Fusion-io in December 2005.  Defendant Flynn is named as a defendant in a securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").   Defendant Flynn knowingly, recklessly, or with gross negligence: (i) made improper statements concerning the Company's business prospects; and (ii) failed to ensure that reliable systems of internal controls were in place at the Company.   Fusion-io paid defendant Flynn the following compensation as an executive:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2013 | $426,150 | $6,783,750 | $6,440,584 | - | $588,711 | $14,239,195 |
| 2012 | $340,000 | - | $5,468,691 | $414,000 | - | $6,222,691 |

Defendant Flynn is a citizen of Utah.

16.   Defendant Dennis P. Wolf ("Wolf") was Fusion-io's Chief Financial Officer ("CFO") from November 2009 to November 2013; an Executive Vice President from October 2010 to November 2013; and a Senior Vice President from March 2010 to October 2010. Defendant Wolf is named as a defendant in a securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act.  Defendant Wolf knowingly, recklessly, or with gross negligence: (i) made improper statements concerning the Company's business prospects; and (ii) failed to ensure that reliable systems of internal controls were in place at the Company.  Fusion-io paid defendant Wolf the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Total |
|---|---|---|---|---|---|---|
| 2013 | $340,012 | $100,000 | $2,045,615 | $1,109,072 | - | $3,594,699 |
| 2012 | $261,667 | - | - | $2,839,513 | $217,350 | $3,318,530 |

Defendant Wolf is a citizen of California.

17.   Defendant H. Raymond Bingham ("Bingham") is a Fusion-io director and has been since February 2011.  Defendant Bingham is also a member of Fusion-io's Audit Committee and Chairman of the Compensation Committee and has been since at least October 2011.  Defendant Bingham knowingly or recklessly: (i) made improper statements concerning the Company's business prospects; (ii) reviewed and approved improper statements concerning the Company's business prospects in violation of his duties as a member of the Company's Audit Committee; (iii) failed to ensure that reliable systems of internal controls were in place at the Company; and (iv) caused or allowed the Company to provide defendant Flynn his improper severance.  Fusion-io paid defendant Bingham the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $83,500 | $374,850 | - | $458,350 |
| 2012 | $75,500 | - | $1,057,339 | $1,132,839 |

Defendant Bingham is a citizen of California.

18.   Defendant Dana L. Evan ("Evan") is a Fusion-io director and has been since February 2011.  Defendant Evan is also Chairman of Fusion-io's Audit Committee and a member of the Compensation Committee and has been since at least October 2011.  Defendant Evan

knowingly or recklessly: (i) made improper statements concerning the Company's business prospects; (ii) reviewed and approved improper statements concerning the Company's business prospects in violation of her duties as a member of the Company's Audit Committee; (iii) failed to ensure that reliable systems of internal controls were in place at the Company; and (iv) caused or allowed the Company to provide defendant Flynn his improper severance.  Fusion-io paid defendant Evan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $86,000 | $374,850 | - | $460,850 |
| 2012 | $79,000 | - | $1,057,339 | $1,136,339 |

Defendant Evan is a citizen of California.

19.    Defendant Scott D. Sandell ("Sandell") is Fusion-io's Lead Independent Director and has been since May 2011 and a director and has been since March 2008.  Defendant Sandell is also a member of Fusion-io's Compensation Committee and has been since at least October 2011.  Defendant Sandell knowingly or recklessly: (i) made improper statements concerning the Company's business prospects; (ii) failed to ensure that reliable systems of internal controls were in place at the Company; and (iii) caused or allowed the Company to provide defendant Flynn his improper severance.  Fusion-io paid defendant Sandell the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $85,750 | $374,850 | - | $460,600 |
| 2012 | $62,875 | - | $1,057,339 | $1,120,214 |

Defendant Sandell is a citizen of California.

20.    Defendant Forest Baskett ("Baskett") is a Fusion-io director and has been since March 2008.   Defendant Baskett knowingly or recklessly: (i) made improper statements concerning the Company's business prospects; and (ii) failed to ensure that reliable systems of internal controls were in place at the Company.  Fusion-io paid defendant Baskett the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $61,500 | $374,850 | - | $436,350 |
| 2012 | $59,250 | - | $1,057,339 | $1,116,589 |

Defendant Baskett is a citizen of California.

21.     The defendants identified in ¶¶15-16 are referred to herein as the "Officer Defendants."   The defendants identified in ¶15, 17-20 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶17-18 are referred to herein as the "Audit Committee Defendants."   The defendants identified in ¶¶17-19 are referred to herein as the "Compensation Committee Defendants."   Collectively, the defendants identified in ¶¶15-20 are referred to herein as the "Individual Defendants."

**Fiduciary Duties**

22.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Fusion-io and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Fusion-io in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Fusion-io and not in furtherance of their personal interest or benefit.

23.     To discharge their duties, the officers and directors of Fusion-io were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.   By virtue of such duties, the officers and directors of Fusion-io were required to, among other things:

(a)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

1            (c)      remain informed as to how Fusion-io conducted its operations, and, upon

2    receipt of notice or information of imprudent or unsound conditions or practices, make

3    reasonable inquiry in connection therewith, and take steps to correct such conditions or practices

4    and make such disclosures as necessary to comply with applicable laws.

5    **Breaches of Duties**

6          24.     The conduct of the Individual Defendants complained of herein involves a

7    knowing and culpable violation of their obligations as officers and directors of Fusion-io, the

8    absence of good faith on their part, and a reckless disregard for their duties to the Company that

9    the Individual Defendants were aware or reckless in not being aware posed a risk of serious

10   injury to the Company.

11         25.     The Individual Defendants breached their duty of loyalty and good faith by

12   allowing defendants to cause, or by themselves causing, the Company to misrepresent its

13   business prospects.  These improper practices caused Fusion-io to incur substantial damage.

14         26.     The Individual Defendants, because of their positions of control and authority as

15   officers and/or directors of Fusion-io, were able to and did, directly or indirectly, exercise control

16   over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent

17   the other Individual Defendants from taking such illegal actions.  As a result, and in addition to

18   the damage the Company has already incurred, Fusion-io has expended, and will continue to

19   expend, significant sums of money.

20   **Additional Duties of the Audit Committee Defendants**

21         27.     In addition to the general duties discussed above, under its Charter, which has

22   been in place since at least June 2011, the Audit Committee Defendants, defendants Bingham

23   and Evan, owed specific duties to Fusion-io to assist the Board in overseeing the "Company's

24   compliance with applicable law," "including U.S. federal securities laws."  Moreover, the Audit

25   Committee's Charter provides that defendants Bingham and Evan owed duties to Fusion-io to

26   oversee and monitor the "Company's accounting and financial reporting processes and internal

27   controls as well as the audit and integrity of the Company's financial statements."  The Audit

28   Committee met seven times in 2012 and nine times in 2013.  As a result of these meetings and

1  their duties pursuant to the Audit Committee Charter, the Audit Committee Defendants knew or

2  recklessly disregarded that the Fusion-io's financial statements concealed adverse trends

3  affecting the Company's business.

4  **Additional Duties of the Compensation Committee Defendants**

5      28.    Under the Company's Compensation Committee Charter effective as of June

6  2011, the Compensation Committee Defendants, defendants Sandell, Bingham, and Evan, owed

7  specific duties to Fusion-io to assist the Board in overseeing the Company's compensation

8  policies, plans, and benefits programs.   Moreover, the Compensation Committee's Charter

9  provides that defendants Sandell, Bingham, and Evan were required to review and recommend to

10  the Board "any employment agreement, severance arrangement or change of control protections"

11  for the CEO.   The Compensation Committee met seven times in 2012 and nine times in 2013.

12  Defendants Sandell, Bingham, and Evan failed to properly administer their duties under the

13  Compensation Committee Charter because they caused or allowed the Company to provide

14  defendant Flynn with the improper severance discussed herein, notwithstanding his improper

15  statements.

16         **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

17      29.    In committing the wrongful acts alleged herein, the defendants have pursued, or

18  joined in the pursuit of, a common course of conduct, and have acted in concert with and

19  conspired with one another in furtherance of their common plan or design.   In addition to the

20  wrongful conduct herein alleged as giving rise to primary liability, the defendants further aided

21  and abetted and/or assisted each other in breaching their respective duties.

22      30.    The purpose and effect of the defendants' conspiracy, common enterprise, and/or

23  common course of conduct was, among other things, to disguise their violations of law, breaches

24  of fiduciary duty, waste of corporate assets, and unjust enrichment; to conceal adverse

25  information concerning the Company's operations.

26      31.    The defendants accomplished their conspiracy, common enterprise, and/or

27  common course of conduct by disseminating improper statements about the Company's internal

28  controls.   Because the actions described herein occurred under the authority of the Board, each of

- 9 -

1  the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy,

2  common enterprise, and/or common course of conduct complained of herein.

3       32.    Each of the defendants aided and abetted and rendered substantial assistance in

4  the wrongs complained of herein.  In taking such actions to substantially assist the commission

5  of the wrongdoing complained of herein, each defendant acted with knowledge of the primary

6  wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of

7  his or her overall contribution to and furtherance of the wrongdoing.

8                      **BACKGROUND**

9       33.    Fusion-io is a computer hardware and software systems company that designs and

10  manufactures memory storage solutions using flash memory technology.  Fusion-io's integrated

11  hardware and software solutions provide the Company's customers with the ability to utilize

12  flash memory technology in large-scale data centers.  The Company sells its products through a

13  global direct sales force, OEM, and other channel partners.

14       34.    Since Fusion-io's initial public offering ("IPO") in 2011, the Company has relied

15  on a few strategic customers to comprise a significant portion of its revenues.  Notably,

16  Facebook and Apple accounted for approximately 60%, 55%, and 50% of Fusion-io's revenue in

17  2011, 2012, and early 2013, respectively.  Fusion-io's reliance on these strategic customers

18  presented a material risk to the Company's ability to generate sales.

19       35.    As explained below, the Individual Defendants improperly touted Fusion-io's

20  strong relationships with its customers and provided false assurances to the market that the

21  Company was able to anticipate demand from its customers.  Moreover, defendants concealed

22  that the Company was facing competitive pressure and risk from the commoditization of flash

23  memory products.

24                  **IMPROPER STATEMENTS**

25       36.    Defendants' improper statements began on August 9, 2012.  On that date, Fusion-

26  io issued a press release announcing its financial results for its fiscal fourth quarter and fiscal

27  year ended June 30, 2012.  The Company reported annual revenue of $359 million with a gross

28  margin of 57.5%.  The Company also announced that revenue growth for fiscal year 2013 would

be in the range of 45-50%. In the press release, defendant Flynn touted Fusion-io's "record revenue" and stated that the Company is "pleased with the momentum [it had] going into the next fiscal year." This press release improperly overstated Fusion-io's business prospects because it concealed that the Company was facing greater competitive pressure. This in turn affected the Company's bottom line as: (i) demand from the Company's strategic customers, including Facebook and Apple, was tapering off; and (ii) the Company was suffering a decrease in gross margins because it was forced to lower prices for its products to match competitors' prices. The press release stated in part:

> "*Fusion-io delivered another record revenue quarter with great execution across the company, and we are pleased with the momentum we have going into the next fiscal year," said David Flynn, Fusion-io chairman and chief executive officer.* "We believe we are still in the early stages of demonstrating the transformative potential of software defined storage solutions that deliver greater performance and efficiency for customers at a fraction of the cost of legacy systems."

37.     Later that same day, on August 9, 2012, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, defendant Wolf explained that based on the Company's experience with its strategic customers, including Facebook and Apple, Fusion-io was able to anticipate the demand from those customers through fiscal 2013. Defendant Wolf stated that "the strategic customers, we've had a couple years of experience with them now. So we have a better understanding of what their predictability will be going through fiscal 2013 now." Defendant Wolf added that the Company is able to anticipate revenues from its strategic customers, stating that "we think we know where our Facebook and Apple revenue will be." During the conference call, defendant Flynn also touted the strength of the Company's competitive position and emphasized that there are significant barriers to entry barring potential competitors from taking market share from Fusion-io. Defendant Flynn stated that "it's really quite a hard problem to take these consumer grade ... Flash chips and make them into an enterprise product that you can scale into thousands of servers." These statements improperly assured the market that Fusion-io did not face any

significant competition or risk from the commoditization of the Company's products. Defendants Wolf's and Flynn's statements during the conference call were as follows:

> [Defendant Wolf:] Another area that we spent a lot of time on, is we assess the strength of our core and strategic customers. Our core business, as we've been talking about, has increased at roughly 100% year-over-year. That's actually a testament to the build out of the sales productivity ramp that we have in the very capable AEs and SEs that we have, who are really going after greenfield opportunities. ***Our key customers -- the strategic customers, we've had a couple years of experience with them now. So we have a better understanding of what their predictability will be going through fiscal 2013 now***. We do assess the demand from our channel partners, but it is nascent. So while we have certain estimates in there, a calculus in there for what it is, it's based on what we expect it to be. Of course, we have a very robust product ramp that we also use in understanding our revenue.
>
> * * *
>
> [Defendant Flynn:] ***So it's really -- we don't bump into many of these other players in either market, because reliability actually matters. It turns out that it's really quite a hard problem to take these consumer grade NAND Flash chips and make them into an enterprise product that you can scale into thousands of servers***. So it's interesting that in the enterprise market, it's all about having a solution and being in front of the customer, having the support and having partners the HP, IBM and Dell. You have to have that, to really compete in that market. ***So we don't see component vendors really there. In the other market, it's at a massive scale and so with the new technology that reliability matters. So that's why you don't see us talking all that much about the competition there***.

38. On October 24, 2012, the Company issued a press release announcing its financial results for its fiscal first quarter ended September 30, 2012. The Company reported quarterly revenue of $118 million with a gross margin of 59.4%. In the press release, defendant Flynn commented that the Company is "pleased with [its] execution in the first quarter and [its] ability to continue to capture market share." The Company also reiterated that its "[f]iscal [y]ear 2013 guidance remains unchanged." This press release improperly overstated Fusion-io's business prospects because it concealed that the Company was facing greater competitive pressure. This in turn affected the Company's bottom line as: (i) demand from the Company's strategic customers, including Facebook and Apple, was tapering off; and (ii) the Company suffered a

decrease in gross margins because it was forced to lower prices for its products to match competitors' prices. The press release stated:

> Non-GAAP net income for the fiscal first quarter of 2013 was $14.9 million, or $0.14 per diluted share, compared to non-GAAP net income of $15.1 million, or $0.15 per diluted share in the same quarter of 2012. Non-GAAP gross margin for the fiscal first quarter 2013 was 59.5%. Non-GAAP operating margin for the fiscal first quarter 2013 was 19.5%. A complete reconciliation of GAAP to non-GAAP results is set forth in the attachment to this press release.

> ***"We are pleased with our execution in the first quarter and our ability to continue to capture market share," said David Flynn, Fusion-io chairman and chief executive officer.*** "Our innovative use of flash memory technology in our portfolio of software defined data acceleration solutions is yielding significant performance and efficiency improvements for our customers' data centers. We believe the economic benefits enabled by flash technology and Fusion-io software become only more compelling over time."

39.    Later that same day, on October 24, 2012, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, defendant Wolf emphasized that Fusion-io's revenue outlook remained in the range of 45-50% growth. Specifically, defendant Wolf stated "[o]ur outlook remains – as we said on the call, it remains unchanged." Defendant Wolf's positive statements were improper because the Company would not be able to achieve such growth due to increasing competitive pressure. Defendant Wolf stated:

> ***I think what I'm going to do is I'm going to actually speak to outlook in general and core and key customers in specifics. Our outlook remains – as we said on the call, it remains unchanged. And there are some really positive forces in our growth drivers that enable us to think that.*** One is, as David was talking about, our new products. We have more new products now than we've ever had.

> Our go-to market strategy is actually expanded. We have partners, we have channels, we are deepening our geographies. We have our Alliance program, our TAP program; we have the federal sector that's doing very well. We have also continued to have a very strong VAR channel, and we are building out the SDK channel, where now we have approximately 300 IFCs.

40.    On January 30, 2013, the Company issued a press release announcing its financial results for its fiscal second quarter ended December 31, 2012. The Company reported quarterly revenue of $120.6 million with a gross margin of 61.8%, which exceeded analysts' consensus

- 13 -

expectations.  However, the Company also surprised investors and announced that it no longer anticipated achieving its previously issued earnings guidance for the fiscal third quarter of 2013 and fiscal year 2013.  Fusion-io lowered its third quarter revenue guidance to $80 million, and its fiscal 2013 revenue guidance to "approximately $420 to $440 million," which represents revenue growth of about 17-22%—less than half the 45-50% growth the Company had previously touted. Despite the disappointing guidance revision, the press release explained that the change in guidance was due to a temporary shift in the timing of purchases from Fusion-io's strategic customers.  Specifically, the press release stated that "the change in our guidance reflects a two-quarter shift in the timing of [Facebook's and Apple's] bulk purchases."  These reassurances were improper because it was not just the timing of the customers' purchases that affected the Company's guidance.   On the contrary, demand from the Company's strategic customers, including Facebook and Apple, was tapering off.  The press release stated:

> Dennis Wolf, Fusion-io chief financial officer, added: "Our two largest customers have purchased nearly half a billion from Fusion-io since 2010, representing robust adoption of our technology. There is a lot of potential with these key customers, and **the change in our guidance reflects a two-quarter shift in the timing of their bulk purchases**. A healthy pipeline for growth, fueled by new products and partnerships, as well as a solid financial position, with more than $365 million in cash and equivalents, will enable us to drive the business forward and create value for our shareholders."

41.     Later that same day, on January 30, 2013, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call, defendant Flynn assured investors that the revised guidance reflects only a temporary shift in purchases from two strategic customers, and not a systemic change in demand from Facebook or Apple.  In particular, defendant Flynn reiterated that "[t]he change in our guidance is a result of a shift in the timing of both purchases from our two key accounts, specifically for the next two quarters."  Defendant Flynn also explained that the efficiency of the Company's products, and not competitive pressure, led to lower demand from its strategic customers.  Finally, defendant Flynn assured investors that the Company was confident that the sales to Facebook and Apple would return to previous levels following the two quarter shift.  Specifically, defendant Flynn stated that "we work with these customers very closely and have an understanding of what new

applications are coming online and how they are scaling them." Defendant Flynn added that "this is really about the timing of when they put in new infrastructure, not whether or not Fusion-io is a key part of that infrastructure." Defendant Flynn's statements were improper because it was not just the timing of the customers' purchases that affected the Company's guidance. Defendant Flynn concealed that Fusion-io was facing greater competitive pressure and that this in turn affected the Company's bottom line. Defendant Flynn stated:

> Let me address what is certainly top of mind -- our guidance for the second half of the year. Our core enterprise Business grew at 67% year-over-year in the second quarter, and our guidance reflects that strong growth. ***The change in our guidance is a result of a shift in the timing of both purchases from our two key accounts, specifically for the next two quarters***. When building out data centers and expanding into new application areas, these customers have purchased in large volumes. They are now achieving greater efficiency thanks to our products, which has led to a shift in their near-term demands.

> \*   \*   \*

> We have -- we work with these customers very closely and have an understanding of what new applications are coming online and how they are scaling them. This is based on information with our interaction with those teams and the fact that never has really the use of our product been the question. It is the question of when their deployments happen. So, ***this is really about the timing of when they put in new infrastructure, not whether or not Fusion-io is a key part of that infrastructure***. It still is up to them on when they deploy these things, but we provide guidance best of the best that we see.

42.    On April 24, 2013, the Company issued a press release announcing its financial results for its fiscal third quarter ended March 31, 2013. The Company reported quarterly revenue of $87.7 million with a gross margin of 55.1%. The Company also reiterated its fiscal year 2013 revenue guidance. This press release was improper because it concealed the nature and extent of the negative trends affecting the Company's business. The press release stated:

> Fusion-io reported revenue of $87.7 million for the fiscal third quarter 2013, down 7% from $94.2 million for the same quarter of 2012 and down 27% from $120.6 million for the preceding quarter. Net loss for the fiscal third quarter of 2013 was $20.0 million, or a net loss per diluted share of $0.21, compared to a net loss of $4.7 million, or a net loss per diluted share of $0.05, in the fiscal third quarter of 2012. Gross margin for the fiscal third quarter 2013 was 55.1%. Operating margin for the fiscal third quarter 2013 was a negative 32.5%.

43.     Following the Company's third quarter earnings announcement, on April 24, 2013, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations.   During the conference call, defendant Flynn reiterated that the Company's relationship with its strategic customers remained strong and that their demand for Fusion-io's products has not changed.   Defendant Flynn explained that the Company's "relationship with Facebook and Apple is strong ... we are a key part of their infrastructure and expect to grow as they grow."  Defendant Flynn's statements were improper because demand from the Company's strategic customers, including Facebook and Apple, was tapering off. Defendant Flynn stated:

> **_Our relationship with Facebook and Apple is strong. Their orders this quarter were in line with our expectations. They are a key -- we are a key part of their infrastructure and expect to grow as they grow._** In addition to these two leaders, the broader hyperscale market represents an even larger upside opportunity for Fusion-io. As we expand our base of hyperscale customers, our revenue stream will naturally become less lumpy. The introduction of the ioScale product line has been successful. Of the 12 customers who exceeded $1 million in orders, 8 were orders for ioScale product. Four of those exceeded $5 million.

44.     On August 7, 2013, the Company issued a press release announcing its financial results for its fiscal fourth quarter and fiscal year ended June 30, 2013.  The Company reported annual revenue of $432.4 million with a gross margin of 58.9%.  The Company also announced fiscal year 2014 revenue growth guidance of approximately 20%.   This press release was improper because it concealed the nature and extent of the negative trends affecting the Company's business.  The press release stated:

> Revenue for fiscal year 2013 was $432.4 million, up 20% from $359.3 million in fiscal year 2012. Net loss for the fiscal year 2013 was $38.2 million, or a net loss per diluted share of $0.40. This compared to a net loss of $5.6 million, or a net loss per diluted share of $0.06, in fiscal year 2012. Gross margin for the fiscal year 2013 was 58.9%. Operating margin for fiscal year 2013 was a negative 8.5%.
>
> * * *
>
> **Fiscal Year 2014 guidance:**
>
> • **_Revenue growth of approximately 20%._**
> • **_Non-GAAP gross margin in the range of 52% to 54%._**
> • Non-GAAP operating margin in the range of 2% to 5%, which includes the full effect of the acquisition of NexGen Storage Systems, Inc.
> • Diluted shares outstanding of approximately 113 million shares.

- 16 -

45.     After releasing Fusion-io's fourth quarter and year-end 2013 financial results, on August 28, 2013, defendants caused the Company to file its Annual Report on Form 10-K with the U.S. Securities and Exchange Commission ("SEC").  Defendants Sandell, Wolf, Baskett, Bingham, and Evan signed the Form 10-K.  The Form 10-K outlined "trends in [Fusion-io's] business" but failed to disclose the nature and extent of the growing competitive pressure the Company was facing. Instead, the Form-10-K stated that the Company "believe[s] that [it] compete[s] favorably [against its] competitors."  This was not true.   The Company was not competing favorably, which in turn affected the Company's bottom line as: (i) demand from the Company's strategic customers, including Facebook and Apple, was tapering off; and (ii) the Company was suffering a decrease in gross margins because it was being forced to lower prices for its products to match competitors' prices.  In addition, the Form 10-K also contained a section addressing the Company's evaluation of its internal disclosure controls and procedures.   The Form 10-K improperly concluded that the Company's"disclosure controls and procedures were effective."  In truth, the Company lacked effective disclosure controls and procedures.  The Form 10-K stated:

> **We believe that we compete favorably against our competitors** on the basis of these factors.
>
> * * *
>
> **Trends in Our Business**
>
> * * *
>
> *Sales and Marketing*
>
> We plan to continue to invest in sales by increasing our sales headcount. Our sales personnel are typically not immediately productive and therefore the increase in sales and marketing expense when we add new sales representatives is not immediately offset by increased revenue and may not result in increased revenue over the long-term. We expect sales and marketing expenses to increase in absolute dollars as we expect to continue hiring new sales representatives. We also expect to expand marketing activities to drive sales opportunities and brand awareness.

*Research and Development*

We expect to continue to devote substantial resources to the development of our products including the development of new products. We believe that these investments are necessary to maintain and improve our competitive position. We expect research and development expenses to increase in absolute dollars as we expect to continue to invest in additional engineering personnel and infrastructure required to support the development of new products and to enhance existing products.

*General and Administrative*

While we expect personnel costs, including stock-based compensation expense, to be the primary component of general and administrative expenses, we also expect to continue to incur significant legal and accounting costs related to compliance with rules and regulations applicable to public companies. We expect that general and administrative expenses will continue to increase in absolute dollars primarily due to general growth of the business, infrastructure costs to support our growth, and in legal costs related to intellectual property.

\* \* \*

**Evaluation of Disclosure Controls and Procedures**

As required by Rule 13a-15(b) under the Securities Exchange Act of 1934, as amended, or the Exchange Act, our management, including our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures, as defined in Rule 13a-15(e) under the Exchange Act. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that, as of the end of the period covered by this report, ***our disclosure controls and procedures were effective***.

## REASONS THE STATEMENTS WERE IMPROPER

46.     The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)     the Company was facing growing competitive pressure;

(b)     Fusion-io's flash memory products had become increasingly commoditized, which allowed the Company's customers to seek out lower cost alternatives;

(c)     the Company was suffering a decrease in gross margins because it was being forced to lower prices for its products to match competitors' prices;

1       (d)     demand from the Company's strategic customers, including Facebook and

2   Apple, was tapering off; and

3       (e)     as a result of the foregoing, defendants' representations concerning the

4   Company's business prospects were improper.

## THE TRUTH EMERGES

6       47.     The  truth  behind  the  Company's  business  prospects  and  the  Individual

7   Defendants'  wrongdoing  began  to  emerge  on  October 23, 2013,  when  the  Company  issued  a

8   press release announcing its financial results for its fiscal first quarter ended September 30, 2013.

9   In the press release, Fusion-io revoked its prior 20% revenue growth guidance.  Notwithstanding

10  defendants' assurances that Facebook and Apple had only shifted the timing of their purchases of

11  Fusion-io products, the Company finally revealed that these strategic customers were decreasing

12  their purchases of Fusion-io's products.  The press release stated:

13  **BUSINESS OUTLOOK**

14  The following statements are based on current expectations. These statements are
    forward-looking, and actual results may differ materially. These statements
15  supersede all prior statements regarding fiscal 2014 financial results.

16  Second quarter of fiscal year 2014:

17      • Revenue is expected to be up slightly sequentially.

18      • Non-GAAP gross margin is expected to be in the range of 52 to 54%.

19      • Non-GAAP operating margin of approximately negative 15 to 20%.

20      • Diluted shares outstanding are expected to be approximately 105 million shares.

21      48.     The  revelation  of  the  Company's  true  business  prospects  prompted  analysts  at

22  William Blair to explain in their October 23, 2013 analyst report that: "Fusion faces serious and

23  fundamental problems. It is evident that the company's two largest strategic customers [Facebook

24  and Apple] are becoming less predictable purchasers and that they are apparently tapering off

25  their investments in Fusion hardware."   The analyst report also stated that the Company is

26  "competing more on price as evidenced by management's significantly curtailed gross margin

27  guidance....   In other words, ***many of the concerns around increased competition,***

28  ***commoditization, and customer concentration have come to fruition***."

- 19 -

49.    The next day, on October 24, 2013, analysts with JPMorgan shared similar thoughts about the Company's business prospects in their analyst report.  The JPMorgan analysts were also surprised by the sudden decrease in gross margins, which, according to the analysts, meant that competitive pressures were stronger than the Company had indicated.  The JPMorgan analysts commented that the "[c]ompetitive moat could be shrinking already. In our view, a key sign-post is gross margin and how it trends directionally."

**DEFENDANT FLYNN'S GOLDEN PARACHUTE IS UNJUST AND IN BREACH OF DEFENDANTS' FIDUCIARY DUTIES**

50.    Notwithstanding his dissemination of improper statements which has caused Fusion-io to incur substantial damage, defendants still granted defendant Flynn a golden parachute when he resigned in May 2013.   The Compensation Committee Defendants, defendants Sandell, Bingham, and Evan, reviewed and approved the severance for defendant Flynn.  Defendant Flynn's severance provided him a cash payment of $500,000, an additional twelve months of vesting of his outstanding equity awards, and reimbursement of group health plan premiums for him and his eligible dependents.   Moreover, pursuant to his severance agreement, defendant Flynn is eligible to receive a pro-rated annual bonus for fiscal year 2013.

**DAMAGES TO FUSION-IO**

51.    As a result of the Individual Defendants' improprieties, Fusion-io disseminated improper, public statements concerning its business prospects.  These improper statements have devastated Fusion-io's credibility as reflected by the Company's over $316 million, or nearly 25%, market capitalization loss.

52.    The Individual Defendants' statements also damaged the Company's reputation within the business community and in the capital markets.  In addition to price, Fusion-io's current and potential customers consider a company's trustworthiness and stability.  Businesses are less likely to award contracts to companies that lie to their investors or are uncertain about their own financial conditions.  Also, Fusion-io's ability to raise equity capital or debt on favorable terms in the future is now impaired.  The Company stands to incur higher marginal costs of capital and debt because the improper statements disseminated by the Individual

1  Defendants have materially increased the perceived risks of investing in and lending money to
2  the Company.

3         53.    Further, as a direct and proximate result of the Individual Defendants' actions,
4  Fusion-io has expended, and will continue to expend, significant sums of money.    Such
5  expenditures include, but are not limited to:

6                (a)    costs incurred from defending and paying any settlement in the class
7  action for violations of federal securities laws; and

8                (b)    costs incurred from compensation and benefits paid to the defendants who
9  have breached their duties to Fusion-io, including but not limited to, the severance paid to
10  defendant Flynn.

11               **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

12        54.    Plaintiff brings this action derivatively in the right and for the benefit of Fusion-io
13  to redress injuries suffered, and to be suffered, by Fusion-io as a direct result of breaches of
14  fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and
15  abetting thereof, by the Individual Defendants.  Fusion-io is named as a nominal defendant solely
16  in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it
17  would not otherwise have.

18        55.    Plaintiff will adequately and fairly represent the interests of Fusion-io in
19  enforcing and prosecuting its rights.

20        56.    Plaintiff was a shareholder of Fusion-io at the time of the wrongdoing complained
21  of, has continuously been a shareholder since that time, and is a current Fusion-io shareholder.

22        57.    The current Board of Fusion-io consists of the following seven individuals:
23  defendants Sandell, Baskett, Bingham, and Evan, and non-defendants Shane Robison
24  ("Robison"), Edward H. Frank, and John F. Olsen.  Plaintiff has not made any demand on the
25  present Board to institute this action because such a demand would be a futile, wasteful, and
26  useless act, as set forth below.

27

28

**Demand Is Excused Because a Majority of the Current Board Faces a Substantial Likelihood of Liability for Their Misconduct**

58.     As alleged above, defendants Sandell, Baskett, Bingham, and Evan breached their fiduciary duties of loyalty by making improper statements regarding the Company's business prospects and disclosure controls.  Moreover, defendants Sandell, Baskett, Bingham, and Evan signed the improper Form 10-K discussed herein.  Accordingly, demand is futile as to defendants Sandell, Baskett, Bingham, and Evan.

59.     Defendants Bingham and Evan, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that defendants Bingham and Evan owed specific duties to Fusion-io to assist the Board in overseeing the "Company's compliance with … U.S. federal securities laws." Moreover, the Audit Committee's Charter provides that defendants Bingham and Evan owed duties to Fusion-io to oversee and monitor the "Company's accounting and financial reporting processes and internal controls as well as the audit and integrity of the Company's financial statements."  The Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's business prospects, earnings guidance, and disclosure controls.  Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public.  Thus, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

60.     Defendants Sandell, Bingham, and Evan, as members of the Compensation Committee, breached their fiduciary duties to the Company.  The Compensation Committee Defendants had a duty to Fusion-io to review and recommend to the Board "any employment agreement, severance arrangement or change of control protections" for the CEO.  As such, defendants Sandell, Bingham, and Evan reviewed and approved defendant Flynn's improper severance discussed herein.  Accordingly, defendants Sandell, Bingham, and Evan face a substantial likelihood of liability for their breach of fiduciary duties rendering any demand upon them futile.

61.     Defendants Sandell, Baskett, Bingham, and Evan breached their duty of loyalty by failing to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures.  As a result of defendants Sandell, Baskett, Bingham, and Evan's course of conduct, the Company is now the subject of a securities class action lawsuit.

62.     Non-defendant Robison lacks sufficient independence with which to render a disinterested decision on whether to pursue the derivative claims due to his position as the Company's CEO.   The principal professional occupation of non-defendant Robison is his employment as an executive of Fusion-io.  As CEO, non-defendant Robison receives substantial monetary compensation and other benefits, which are material to non-defendant Robison.  In particular, despite the fact that non-defendant Robison replaced defendant Flynn in the middle of the 2013 fiscal year, he collected a compensation package worth $10,153,317 in 2013. Accordingly, non-defendant Robison is incapable of impartially considering a demand to commence and vigorously prosecute this action, especially as to the Compensation Committee Defendants, because he has an interest in maintaining the substantial compensation he receives as an executive.   Non-defendant Robison is beholden to the Compensation Committee Defendants as they administer the Company's compensation policies, plans, and benefits programs, and were charged with recommending the "employment agreement" and "change of control" planning that led to non-defendant Robison's new executive position in the first place.

63.     The acts complained of constitute violations of the fiduciary duties owed by Fusion-io's officers and directors and these acts are incapable of ratification.

64.     Fusion-io has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Fusion-io any part of the damages Fusion-io suffered and will suffer thereby.

65.     Plaintiff has not made any demand on the other shareholders of Fusion-io to institute this action since such demand would be a futile and useless act for at least the following reasons:

- 23 -

(a)     Fusion-io is a publicly held company with over 105 million shares outstanding and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants owed and owe Fusion-io fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Fusion-io the highest obligation of good faith, fair dealing, loyalty, and due care.

68.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within Fusion-io, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

69.     Officer Defendants Flynn and Wolf knowingly, recklessly, or with gross negligence: (i) made improper statements concerning the Company's business prospects; and (ii) failed to ensure that reliable systems of internal controls were in place at the Company.  Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

70.     The Director Defendants, Flynn, Bingham, Evan, Sandell, and Baskett, as directors of the Company, owed Fusion-io the highest duty of loyalty.  The Director Defendants knowingly or recklessly breached their duty of loyalty by: (i) making improper statements concerning the Company's business prospects and disclosure controls; and (ii) failing to ensure that reliable systems of internal controls were in place at the Company.

71.     The Audit Committee Defendants, defendants Bingham and Evan, breached their fiduciary duty of loyalty by knowingly or recklessly approving the improper statements described herein which were made during their tenure on the Audit Committee.   The Audit Committee Defendants completely and utterly failed in their duty of oversight, as required by the Audit Committee Charter in effect at the time.

72.     The Compensation Committee Defendants, Sandell, Bingham, and Evan, breached their fiduciary duty of loyalty by causing or allowing the Company to provide defendant Flynn his improper severance.

73.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Fusion-io has sustained significant damages, as alleged herein.   As a result of the misconduct alleged herein, these defendants are liable to the Company.

74.     Plaintiff, on behalf of Fusion-io, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     As a result of the misconduct described above, the Individual Defendants have wasted corporate assets by failing to consider the interests of the Company and its public shareholders.

77.     Moreover, as a result of the Individual Defendants' failure to implement adequate internal controls to ensure that the Company's public statements were accurate, defendants made improper statements in the Company's press releases, conference calls, and public filings.   As a result, Fusion-io is now subject to a securities class action lawsuit.   The Individual Defendants have caused Fusion-io to waste its assets by forcing it to defend itself in the ongoing litigation, in addition to any ensuing costs from a potential settlement or adverse judgment.

78.     Further, the Individual Defendants have caused Fusion-io to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that

breached their fiduciary duty.  In particular, the Compensation Committee Defendants caused Fusion-io to waste its assets by providing defendant Flynn his improper severance.

79.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

80.     Plaintiff, on behalf of Fusion-io, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Fusion-io.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Fusion-io.  Defendant Flynn was further unjustly enriched due to the improper severance he received, as discussed herein.

83.     Plaintiff, as a shareholder and representative of Fusion-io, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

84.     Plaintiff, on behalf of Fusion-io, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Fusion-io, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing Fusion-io to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Fusion-io and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the

Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

      1.     a proposal to strengthen the Company's disclosure controls and procedures;

      2.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

      3.     a provision to permit the shareholders of Fusion-io to nominate at least three candidates for election to the Board;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Fusion-io has an effective remedy;

D.     Awarding to Fusion-io restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 13, 2014

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
JENNY L. DIXON
GINA STASSI

BRIAN J. ROBBINS

600 B Street, Suite 1900

- 27 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525- 3991
brobbins@robbinsarroyo.com
csmith@robbinsarroyo.com
jdixon@robbinsarroyo.com
gstassi@robbinsarroyo.com

Attorneys for Plaintiff

917874

<u>VERIFICATION</u>

I, _Stephen G. Olish_ , hereby declare as follows:

I am Executive Director for The Police Retirement System of St. Louis, plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _1/10/2014_

_____
STEPHEN G. OLISH